J-A10032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARVIN WILSON | : | |
| | : | |
| Appellant | : | No. 972 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 15, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002759-2022

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED JULY 12, 2024**

Marvin Wilson ("Wilson") appeals from the judgment of sentence imposed by the Philadelphia County Court of Common Pleas ("trial court") following his conviction of possession of a firearm by a prohibited person.[1] Upon review, we affirm Wilson's conviction, but vacate Wilson's sentence, and remand this matter to the trial court for resentencing.

The record reflects that on December 28, 2021, City of Philadelphia police officers responded to a report of a person firing a gun from the porch or steps of 5827 Windsor Avenue (the "House"), arriving at approximately 5:30 p.m. that day. N.T., 8/15/2022, at 8-9. Police Officer Kristin Stocker ("Officer Stocker") found two .40 caliber fired cartridge casings ("FCCs")

_____

[1] 18 Pa.C.S. § 6105(a)(1).

outside the House: one on a step and the other on the porch.  *Id.* at 9-10; Exs. C-1 (Officer Stocker's incident report), C-2-C-7 (photographs of FCCs on porch and steps of the House), C-22 (video of Officer Stocker's body worn camera video).  Police Officer Brian Solomon ("Officer Solomon") and other police officers knocked on the door; Wilson answered, came outside, and told officers that someone had been firing shots across the street and that no one else was inside the House.  N.T., 8/15/2022, at 9; Exs. C-22, D-3 (video of Officer Solomon's body worn camera).  Police officers detained Wilson and while detained, he told officers that his girlfriend was sleeping inside the House.  Exs. C-22, D-3.  An unidentified male then exited the House; police officers directed him to remain on the porch and he complied.  Ex. D-3.  Officer Solomon, Officer Stocker, and other officers entered the House without a warrant over the objection of a third male, identified as Wilson's uncle, who had come to the front door of the House.  Exs. C-22, D-3.  The officers directed the uncle to sit on one of two couches in the first floor living room, which he did.  Ex. D-3.  Once inside, police conducted a protective sweep of the House, located Wilson's girlfriend in a second-floor bedroom, and secured the House.  N.T., 8/15/22, at 16-17; Exs. C-22; D-3.  During his protective sweep of the living room and kitchen, Officer Solomon observed a firearm under one of the living room couches located immediately adjacent to the front door where no one was seated.  Ex. D-3.  After the officers completed the protective sweep of the House, Detective Allan Relova ("Detective Relova") obtained a search

warrant to search the House for firearms, ballistics, and proof of residence. N.T., 8/15/2022, at 24-25. Detective Relova and his partner executed the search warrant at the House shortly before 10:00 p.m. that night, recovering from under the same living room couch, a Smith & Wesson .40 caliber firearm with three bullets in the magazine and one in the chamber; the two .40 caliber FCCs from the porch and steps; and mail in a second-floor bedroom addressed to Wilson at 5827 Windsor Avenue. *Id.* at 21-26; Exs. C-8-C-10 (photographs of living room couch with firearm visible underneath), C-11 (property receipt of two .40 caliber FCCs), C-12 (property receipt of firearm), C-13 (photograph of mail addressed to Wilson at the House), C-14 (photograph of firearm with magazine and ammunition).

Thereafter, Wilson was charged with possession of a firearm by a prohibited person, possession of an instrument of a crime ("PIC"),[2] and recklessly endangering another person ("REAP").[3] Wilson filed a motion to suppress any statements made by him, and physical evidence found and seized from the House—i.e., the gun, ammunition, ammunition clips, and mail. N.T., 8/15/2022, at 5; Omnibus Motion, 4/29/2022; Supplemental Omnibus Motion, 7/19/2022. Following a suppression hearing on August 15, 2022, the trial court denied the motion and the parties proceeded immediately to a non-

---

[2] 18 Pa.C.S. § 907(a).

[3] 18 Pa.C.S. § 2705.

jury trial.[4]  The trial court found Wilson guilty of possession of a firearm by a prohibited person, and not guilty of PIC and REAP.  The trial court ordered a mental health evaluation and pre-sentence investigation ("PSI") report and on November 15, 2022, sentenced Wilson to six to twelve years of imprisonment. Wilson filed a timely post-sentence motion seeking reconsideration of his sentence, which the trial court denied by operation of law.

Wilson timely appealed to this Court and now presents the following issues for our review:

> A.    Was it an error of law for the trial court to deny the motion to suppress physical evidence where, after an initial warrantless entry of a home that exceeded the scope of a permissible protective sweep, a warrant was obtained to seize items seen but that warrant was never produced at the suppression hearing and there was no proof that it was based upon probable cause and not a fruit of the initial entry?
>
> B.    Was the evidence insufficient to prove ineligible possession of a firearm, [18 Pa.C.S.] § 6105, where there was no proof of actual, constructive or joint constructive possession of the weapon?

Wilson's Brief at 6 (reordered for ease of disposition).

Wilson's suppression argument is twofold: first, that police officers' initial search of the House was illegal because it exceeded the permissible scope of a protective sweep, and second, the trial court should have

---

[4]   The Commonwealth presented the testimony of Officer Stocker and Detective Revola at the suppression hearing.  At trial, the Commonwealth moved to incorporate all non-hearsay testimony from the suppression hearing into its case-in-chief, which the trial court granted.  N.T., 8/15/2022, at 41.

suppressed evidence of the firearm because it was seized pursuant to a warrant that was the fruit of an illegal search of the House. *Id.* at 12-13, 19-24.

The trial court found Wilson waived his suppression claim because it was "confusing and very poorly written." Trial Court Opinion, 6/6/2023, at 4 (citing Wilson's Rule 1925(b) Statement, 5/2/2023, ¶ 4).[5] Nonetheless, the trial court addressed Wilson's claim and found it meritless. *Id.* at 5-7. Specifically, the trial court found that the police officers were justified in

_____

[5] Wilson's statement of this claim in his Rule 1925(b) statement provided as follows:

> The Court erred as a matter of law, violated petitioner's rights under the U.S. and Pennsylvania constitutions, and abused its discretion by denying defendant's motion to suppress any and all physical evidence recovered from petitioner's home, as police conducted a warrantless search of the premises without consent, exigency or other constitutional basis, not ameliorated by the subsequent search with a warrant, nor was the seizure of the weapon lawful, consistent with plain view principles.

Rule 1925(b) Statement, 5/2/2023, ¶ 4(a). The Commonwealth likewise argues that Wilson waived his suppression claim based on an insufficient Rule 1925(b) statement. *See* Commonwealth's Brief at 12-13. We decline to find waiver. Wilson's 1925(b) statement clearly raises the issue of whether the warrantless search was unconstitutional and thus whether the seized firearm and other items must be suppressed as fruit of an initial illegal search. However, Wilson also seemingly argues in his brief that there was lack of probable cause for the search warrant because the Commonwealth failed to introduce the warrant and affidavit of probable cause into evidence. *See* Wilson's Brief at 23-24; Wilson's Reply Brief at 3-4. This argument is waived for failing to raise it in his concise statement. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

entering the House without a warrant "to perform a safety check" given the report of a person shooting a gun on the steps of the House, their observation of FCCs on the porch, Wilson's detention at the front door, and officers' later observation through the open front door of other persons inside the House. *Id.* at 6-7. Once inside, the trial court found that one of the officers observed, in plain view, a firearm protruding beneath a couch in the front living room. *Id.* at 6. The trial court thus found probable cause existed for the search warrant subsequently obtained because police officers' initial entry into the House was permissible and the firearm was observed in plain view. *Id.* at 7.

"Our standard of review on appeal of the denial of a motion to suppress is limited to determining whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Hall*, 199 A.3d 954, 959 (Pa. Super. 2018) (quotation marks, footnote, and citations omitted). "If the record supports the factual findings of the trial court, we reverse only if there is an error in the legal conclusions drawn from those factual findings." *Id.* (quotation marks and citations omitted).

"Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals, their homes, their papers, and their effects and possessions from unreasonable searches and seizures." *Commonwealth v. Valdivia*, 195 A.3d 855, 861 (Pa. 2018) (quotation marks omitted) (citing U.S. Const. amend. IV; Pa.

Const. art. I, § 8). A search conducted without a warrant is unreasonable and therefore constitutionally impermissible unless an established exception to the warrant requirement applies. *Id.* "'[G]enerally speaking, the exclusionary rule applies to evidence that was obtained from a search or seizure in violation of the Fourth Amendment. The fruit of the poisonous tree doctrine extends the exclusionary rule to render evidence inadmissible which was derived from the initially illegally obtained evidence.'" *Commonwealth v. Ani*, 293 A.3d 704, 731 (Pa. Super. 2023) (quoting *Commonwealth v. Santiago*, 209 A.3d 912, 916 n.4 (Pa. 2019)).

A protective sweep is an exception to the warrant requirement. *Commonwealth v. Taylor*, 771 A.2d 1261, 1267 (Pa. 2001). "A protective sweep is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Id.* (quotation marks and citation omitted). In the first level of a protective sweep, police officers do not need reasonable suspicion to conduct a cursory visual inspection of spaces immediately adjacent to the arrest scene that could conceal a person. *Id.* In the second level of a protective sweep, police officers may search "further away from the place of arrest" where the officers who conducted the sweep can articulate specific facts to justify a reasonable fear for their safety or the safety of others. *Id.* In deciding whether the facts justified a protective sweep, we "must consider all of the facts objectively and from the position of the reasonably prudent police officer." *Id.* (citation

- 7 -

omitted). A protective sweep "cannot be used as a pretext for an evidentiary search" and "must be swift and target only those areas where a person could reasonably be expected to hide." **Commonwealth v. Crouse**, 729 A.2d 588, 598 (Pa. Super. 1999). All evidence observed in plain view during a protective sweep is admissible. **Commonwealth v. Witman**, 750 A.2d 327, 336 (Pa. Super. 2000); **see also Commonwealth v. Smith**, 285 A.3d 328, 332 (Pa. Super. 2022) ("There can be no reasonable expectation of privacy in an object that is in plain view.") (quotation marks and citation omitted).

We first address the police officers' initial entry into the House. Wilson does not dispute exigent circumstances existed to permit police officers to enter without a warrant and conduct a protective sweep to ensure no one had suffered a serious injury.[6] Wilson's Brief at 19. Rather, he focuses on the police officers' conduct once they had entered the House, taking issue with police officers "lifting up and looking under the cushions on the couch where no one could have been," officers' flashlights "scanning the living room and

---

[6] Regarding the initial entry into the House, Wilson challenges the trial court's reliance on the police officers' "need to conduct a safety check to protect themselves" when there was "no testimony regarding fear for their safety." Wilson's Brief at 19; **see also** Wilson's Reply Brief at 5. Because Wilson does not challenge the exigency exception and officers' need to check whether anyone was seriously injured, we need not address this argument. In any event, as the officers observed FCCs outside the House, had not yet located the firearm, and knew others were inside the House, their protective sweep was supported by articulable facts and inferences which gave them reasonable concern for their safety and the safety of others. **See Taylor**, 771 A.2d at 1267.

the kitchen, looking into all corners, where it was not possible for a person to have been hiding," and Detective Revola's testimony that he "crouch[ed] down" to look under the couch. *Id.* at 20-21.

We begin by noting that the footage from Officer Solomon's body-worn camera shows that the "cushions" to which Wilson refers were actually small throw pillows on top of the couch. Ex. D-3. Officers directed the man identified as Wilson's uncle to sit on one of the living room couches, which had four throw pillows on it. *Id.* As the man was about to sit down, two officers— one on each side—briefly moved the throw pillows as he sat. *Id.* The record does not reflect, and Wilson does not argue, that the officers' actions yielded any evidence or contraband. Thus, this argument does not entitle him to relief on his suppression claim.

With respect to the officers' use of flashlights, we observe that the incident occurred on a late December evening, when it was already dark outside; the inside of the House was not well lit; and the flashlights were necessary to aid the officers' visibility. Exs. C-22, D-3. Using flashlights to illuminate the inside of the House during the officers' protective sweep was not an unconstitutional intrusion. *See Commonwealth v. Jones*, 978 A.2d 1000, 1005 (Pa. Super. 2009) (holding use of police vehicle's spotlight to illuminate porch of suspected drug house at night did not infringe on reasonable expectations of privacy).

Finally, regarding Detective Revola's "crouching" testimony,[7] the record reflects that Officer Solomon was the first to observe the firearm during his protective sweep; Detective Revola did not enter the House until later that night, after he had obtained a search warrant. N.T., 8/15/2022, at 21; Ex. D-3. The footage from Officer Solomon's camera clearly shows that he spotted the firearm in plain view under the couch immediately adjacent to the front door without crouching or bending down. N.T., 8/15/2022, at 22; Ex. D-3. Officer Solomon entered the House, walked through the living room to the kitchen, turned around, and walked back into the living room. Ex. D-3. From a normal standing position, the firearm was visible under the couch as Officer Solomon walked back into the living room from the kitchen. *Id.* at 14:53. Because Officer Solomon observed the firearm in plain view during a protective sweep, it was admissible evidence. *See Witman*, 750 A.2d at 336; *Smith*, 285 A.3d at 332. Accordingly, the trial court did not err in denying

---

[7] On direct examination, Detective Revola's testimony was as follows:

Q.    What is [Exhibit C-]9?

A.    No. 9 is a photo of under the couch. You could see the butt of the gun when you crouch down, when I crouch down.

N.T., 8/15/2022, at 22.

Wilson's motion to suppress and such claim is without merit.[8] *Hall*, 199 A.3d at 959.

Wilson next challenges the sufficiency of the evidence to support his conviction of possession of a firearm by a prohibited person. Wilson's Brief at 11-12, 14-18. According to Wilson, there was no evidence of his actual possession of the firearm and the trial court therefore erred in identifying him as the shooter. *Id.* at 11-12, 16-17 (citing Trial Court Opinion, 6/6/2023, at 2 (stating "[Wilson] was identified as the shooter"), 8 (stating the evidence confirmed "[Wilson] was in physical possession of the firearm")). Wilson further argues there was no evidence of his intent or ability to exercise dominion or control over the firearm. *Id.* at 11, 14-15, 17. Wilson contends his presence or proximity to the firearm is not enough to prove constructive possession. *Id.* at 11-12, 17. Because other individuals were present and had equal access to the firearm, the firearm was not found in a room used exclusively by Wilson, the firearm was not "patently visible" in the living room, and no DNA evidence tied Wilson to the firearm, Wilson maintains it is mere conjecture to conclude he constructively possessed it. *Id.* at 12, 14-15, 18.

Our Court's standard of review for a challenge to the sufficiency of the evidence is well settled:

_____

[8] In light of our conclusion, we need not address Wilson's secondary argument that the firearm was seized pursuant to a warrant that was the fruit of an illegal search.

- 11 -

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Juray*, 275 A.3d 1037, 1042 (Pa. Super. 2022) (quotation marks and citations omitted). The jury, sitting as factfinder at trial, "is free to believe all, part, or none of the evidence presented." *Commonwealth v. Williams*, 302 A.3d 117, 120 (Pa. Super. 2023) (quotation marks and citation omitted).

The Pennsylvania Crimes Code defines persons not to possess firearms, in pertinent part, as follows:

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1).[9] Possession of a firearm is an essential element of the offense of possession of a firearm by a prohibited person. *Id.*; *Commonwealth v. Antidormi*, 84 A.3d 736, 757 (Pa. Super. 2014). The Commonwealth may prove possession by actual, constructive, or joint

---

[9] Wilson does not contest that he was statutorily ineligible to possess a firearm. *See* Wilson's Brief at 11-12, 14-18; *see also* Exs. 20 (Wilson's certificate of non-licensure to carry firearms), 21 (Wilson's Pennsylvania Court Summary depicting his criminal history).

constructive possession. ***Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa. Super. 2018) (citation omitted). .

> Where possession is an element of the offense, the concept of constructive possession is a legal fiction used to prove the element although the individual was not in physical possession of the prohibited item. The evidence must show a nexus between the accused and the item sufficient to infer that the accused had the power and intent to exercise dominion and control over it. Dominion and control means the defendant had the ability to reduce the item to actual possession immediately or was otherwise able to govern its use or disposition as if in physical possession. Mere presence or proximity to the contraband is not enough. Constructive possession can be established by inferences derived from the totality of the circumstances.

***Commonwealth v. Peters***, 218 A.3d 1206, 1209 (Pa. 2019) (citations omitted). Constructive possession may be proven by circumstantial evidence. ***Commonwealth v. McClellan***, 178 A.3d 874, 878 (Pa. Super. 2018) "[C]onstructive possession may be found in either or both actors if contraband is found in an area of joint control and equal access." ***Commonwealth v. Mudrick***, 507 A.2d 1212, 1214 (Pa. 1986). Facts that only support an association, suspicion, or conjecture that the defendant knew of the item and its location are not sufficient to prove constructive possession. ***Parrish***, 191 A.3d at 37.

In analyzing the sufficiency of the evidence, the trial court here explained:

> The combined testimony with the body worn camera [] video and the FCCs confirmed [Wilson] was in physical possession of the firearm. The [trial] court found Detective Relova's testimony credible in providing a nexus to items identified at the scene. The

recovered FCCs found on the step and porch of [Wilson's] residence proved a gun was recently fired. Additionally, the firearm was discovered protruding under the couch in the area immediately near the front door within immediate proximity to [Wilson]. The search warrant revealed recent mail at the residence addressed to [Wilson]. Further, the Commonwealth presented evidence by stipulation of [Wilson's] Certificate of Non[]Licensure proving he was not licensed to carry a firearm and a copy of [Wilson's] First Judicial District of Pennsylvania Secure Court Summary demonstrating a prior conviction prohibiting him from possession of a firearm.

Despite this clear and convincing evidence,[10] [Wilson] asserts [the] Commonwealth failed to prove his § 6105 conviction, contesting his possession of a firearm. This claim is specious and wholly without merit. Pennsylvania law defines "firearms" as any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon. § 6105(i). The accumulation of the above evidence convincingly demonstrates [Wilson's] possession of a firearm, as defined by statute. The [trial] court determined these facts were sufficient to support a finding of [Wilson's] guilt for possession of a firearm prohibited and other related charges for which he was convicted.

Trial Court Opinion, 6/6/2023, at 8 (citations to the record and unnecessary capitalization omitted).

We agree with Wilson that the record evidence was insufficient to prove Wilson's actual possession of the firearm. In finding Wilson was in actual physical possession of the firearm, the trial court stated that it relied on the

_____

[10] To the extent the trial court used the "clear and convincing evidence" standard in this criminal trial, this was error; the correct standard is beyond a reasonable doubt. "An appellate court is not bound by the rationale of the trial court and may affirm on any basis if the record supports it." *Commonwealth v. Martin*, 205 A.3d 1247, 1248 (Pa. Super. 2019) (citation, quotation marks, and brackets omitted).

- 14 -

testimony of Officer Stocker and Detective Revola, their body worn camera videos, and the FCCs. *See id.* at 8. It is unclear, however, what specific testimony or which portion of the video evidence the trial court relied on to find actual possession. The notes of testimony do not support a finding of physical possession—neither witness testified to Wilson's possession, and there is no dispute the firearm was found under the living room couch, not on Wilson's person. Nor is it clear how the FCCs are, as the trial court found, evidence of Wilson's actual possession of the firearm; the record does not reveal any evidence linking the FCCs to Wilson.

At the suppression hearing, the Commonwealth introduced Officer Stocker's incident report, which identified a witness who saw an individual shooting a firearm from the steps or porch of the House. Ex. C-1 (Officer Stocker's incident report). In addition, video from Officer Stocker's body worn camera showed Officer Stocker's interview of this eyewitness. Ex. C-22. She identified Wilson as the shooter. *Id.* As noted, the Commonwealth incorporated all non-hearsay testimony from the suppression hearing into its case-in-chief. N.T., 8/15/2022, at 41. Because this eyewitness did not testify at trial, to the extent the trial court relied on any of the statements made by her to Officer Stocker to establish actual possession, this was error as it was hearsay and thus was not admitted at trial. *See generally* Pa.R.E. 801 (defining hearsay as a statement made outside of court that is offered by a party to prove the truth of the matter asserted in the statement), 802 (stating

- 15 -

that hearsay is generally inadmissible). Accordingly, the record does not support the trial court's finding that Wilson was in actual possession of the firearm.

This does not end our inquiry, however, because, as noted above, Wilson could be found guilty of the crime charged if the evidence supports a finding that he was in constructive possession of the firearm. The record reflects that Wilson lived at the House. N.T., 8/15/2022, at 21, 23; Ex. C-13. Upon responding to a report of gunshots fired from the House, police officers saw two FCCs outside the front door. N.T., 8/15/2022, at 8-10. Wilson answered the front door immediately after the officers knocked, indicating that he was very close to the front door at that time. **See** Ex. C-22. While performing a protective sweep of the House, a firearm was observed by Officer Solomon, plainly visible under the couch immediately adjacent to the front door. **See** Ex. D-3; **see also** N.T., 8/15/2022, at 22. The caliber of the firearm matched that of the FCCs. N.T., 8/15/2022, at 21.

Viewing the totality of the evidence in the light most favorable to the Commonwealth established Wilson's constructive possession of the firearm. The fact that other persons were inside did not render the evidence insufficient to prove his constructive possession because more than one person may have constructive possession of an item at the same time. **See Commonwealth v. Aviles**, 615 A.2d 398, 403 (Pa. Super. 1992) (en banc) (holding evidence was sufficient to show appellant constructively possessed contraband

accessible to her in two bedrooms she rented to her sister and brother-in-law where appellant had access to the unlocked bedrooms and there was no evidence she was denied entry to these rooms in her home); *Hall*, 199 A.3d at 961-62 (holding evidence was sufficient to prove appellant constructively possessed drugs and packing materials found in his apartment where the contraband was found both in plain view and hidden in living room); *Mudrick*, 507 A.2d at 1214 (holding evidence was sufficient to establish appellant constructively possessed marijuana found in the living room where he lived in the house with his girlfriend and they both had equal access to entire residence). As the firearm was located in the living room of Wilson's home— a room to which he clearly had access—we conclude the evidence at trial, as well as all reasonable inferences drawn therefrom sufficiently proved his conviction of possession of a firearm by a prohibited person. Wilson's claim merits no relief.

Although we conclude there was sufficient evidence to convict Wilson of possession of a firearm by a prohibited person, our review of this matter reveals that Wilson's sentence is illegal. *See Commonwealth v. Ramos*, 197 A.3d 766, 768 (Pa. Super. 2018) (stating that this Court may raise and review an illegal sentence claim sua sponte). "Because the legality of a sentence presents a pure question of law, our scope of review is plenary, and our standard of review is de novo." *Commonwealth v. Derrickson*, 242 A.3d 667, 673 (Pa. Super. 2020) (citation omitted). "If no statutory

authorization exists for a particular sentence, that sentence is illegal and must be vacated." *Id.* (citation omitted).

Wilson's conviction of possession of a firearm by a prohibited person was graded as a first-degree felony. *See* Order of Sentence, 11/15/2022; Trial Disposition and Dismissal Form, 8/15/2022; *see also* 18 Pa.C.S. § 6105(a)(1), (a.1)(1.1)(i). For Wilson's conviction to be graded as a first-degree felony, the Commonwealth was required to prove that, at the time of the commission of the firearm possession violation under section 6105(a), Wilson had previously been convicted of an offense under section 6105(a), or was in physical possession or control of a firearm. 18 Pa.C.S. § 6105(a.1)(1.1)(i)(A)-(B).[11] Neither requirement was proven in this case:

_____

[11] The statute provides, in relevant part, as follows:

(1) Except as provided under paragraph (1.1), a person convicted of a felony enumerated under subsection (b) or a felony under the act of April 14, 1972 (P.L. 233, No. 64),[1] known as The Controlled Substance, Drug, Device and Cosmetic Act, or any equivalent Federal statute or equivalent statute of any other state, who violates subsection (a) commits a felony of the second degree.

(1.1) The following shall apply:

(i) A person convicted of a felony enumerated under subsection (b) or a felony under The Controlled Substance, Drug, Device and Cosmetic Act, or any equivalent Federal statute or equivalent statute of any other state, who violates subsection (a) commits a felony of the first degree if:

*(Footnote Continued Next Page)*

- 18 -

there is nothing in the record to suggest that Wilson had been previously convicted of a section 6105 offense, *see* Ex. C-21, and as discussed above, the record does not support a finding that Wilson was in physical possession or control of the firearm. Accordingly, Wilson's conviction cannot be graded as a first-degree felony and instead must be graded as a second-degree felony. *See* 18 Pa.C.S. § 6105(a.1)(1). Because the maximum sentence allowed by statute for a second-degree felony is ten years of imprisonment, and Wilson's sentence of six to twelve years exceeds such maximum, his sentence is illegal and must be vacated. *See* 18 Pa.C.S. § 1103(2) (A person who has been convicted of a felony of the second degree may be sentenced to imprisonment "for a term which shall be fixed by the court at not more than ten years."); Order of Sentence, 11/15/2022 (trial court sentencing Wilson to six to twelve years of imprisonment); *Derrickson*, 242 A.3d at 673.

_____

> (A) at the time of the commission of a violation of subsection (a), the person has previously been convicted of an offense under subsection (a); or
>
> (B) at the time of the commission of a violation of subsection (a), the person was in physical possession or control of a firearm, whether visible, concealed about the person or within the person's reach.

18 Pa.C.S. § 6105(a.1)(1), (1.1).

For the foregoing reasons, we affirm Wilson's conviction, vacate his judgment of sentence, and remand this matter to the trial court for resentencing.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/12/2024